UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

APA Optics, Inc., Civ. File No. 02-51 (PAM/JGL)

Plaintiff,

v. **MEMORANDUM AND ORDER**

Muhammad Asif Khan and Jinwei Yang,

Defendants.

---

This case arises from Plaintiff's claim that Defendants breached a settlement agreement entered into by the parties in June 1998. The settlement agreement ostensibly resolved Plaintiff's claim that Defendants had misappropriated trade secrets. This matter is before the Court Defendants' Motion to Dismiss for lack of subject matter jurisdiction, to Compel Arbitration, or to Transfer Venue.[1] For the following reasons, the Court grants the Motion in part and denies it in part. Specifically, the Court denies the Motion to Dismiss but grants the Motion to Stay the case and Compel Arbitration. Because the Court grants the Motion to Compel Arbitration, the Court denies the Motion to Transfer Venue as moot.

**BACKGROUND**

Plaintiff APA Optics, Inc. ("Optics") is a Minnesota corporation that is engaged in the research and manufacture of optical and electrical parts and components. Defendants Drs.

[1] Although Defendants' Motion was filed and is docketed as a single motion, the Court will address it as three distinct motions.

APR 19 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Muhammad Asif Khan and Jinwei Yang worked for Optics as research scientists for a number of years. In 1997, both Defendants left Optics and joined the University of South Carolina as research professors. After they left, Optics filed several claims against them, essentially alleging that they had misappropriated Optics' trade secrets. Specifically, Optics was concerned with the research Defendants had done on gallium nitride transistors. Apparently, transistors utilizing gallium nitride "wafers" are potentially very valuable to the Department of Defense for use as amplifiers in a radar system for detecting ballistic missiles. Optics claims that it has a long history of researching and developing such transistors and that it has spent millions of dollars on this research.

In June 1998, Defendants entered into a settlement agreement with Optics. The settlement agreement provided that, for a period of four years, Defendants would not grow "a transistor wafer as depicted in [an attached Exhibit] having at least one layer with all of the same parameters including the structure, composition and thickness of any of the layers of the wafers . . . set forth [in that attached Exhibit]." (Khan Aff. Ex. C.) According to Defendants, the Exhibit attached to the settlement agreement merely depicts a heterojunction field effect transistor ("HFET") with layers of "wafers" made from gallium nitride, aluminum gallium nitride, and aluminum nitride. Optics asserts that the Exhibit depicts a whole range of transistors that Defendants agreed not to research, including HFETs and other types of transistors.

The settlement agreement goes on to say that Optics "is entitled to verify that

Defendants are complying with this paragraph by having a neutral third party inspect the wafers and any other related documents . . . ." (Id.) Disputes over the "language of any documents relating to this settlement shall be mediated and, if necessary, arbitrated . . . ." (Id.)

On January 9, 2002, Optics filed the instant action, claiming that Defendants have violated the settlement agreement. As proof of its allegation, Optics points to four papers written in part by Defendants within the last year and a half. (See id. Ex. E.) Optics, however, has not hired a neutral third party to inspect Defendants' research. Defendants deny that they have breached the settlement agreement. They argue that the agreement only prohibited them from growing wafers for HFET transistors and that they have not grown these wafers.

In their Motion, Defendants allege that the Court does not have subject matter jurisdiction over this case because the amount in controversy does not exceed $75,000. To support this claim, Defendants note that, to the best of their knowledge, Optics has not been involved in gallium nitride transistor research for several years. Even if the Court finds that it has subject matter jurisdiction, however, Defendants contend that the Court should stay the case and compel arbitration because the parties disagree about whether, under the language of the settlement agreement, Optics was required to hire a neutral third party to investigate Defendants' research as a prerequiste to filing a lawsuit. Additionally, Defendants argue that arbitration is appropriate because there is a disagreement over exactly what they were

prevented from researching. Finally, Defendants contend that if the Court finds that it has subject matter jurisdiction and does not compel arbitration, the case should be transferred to South Carolina.

## DISCUSSION

### A. Subject Matter Jurisdiction

As a threshold matter, Defendants argue that the Court does not have subject matter over this dispute because diversity jurisdiction does not exist. In order to establish diversity jurisdiction under 28 U.S.C. § 1332, two requirements must be satisfied: (1) complete diversity must exist between the parties; and (2) the amount in controversy must exceed $75,000. There is no dispute in this case that complete diversity exists. Defendants, however, claim that Optics cannot show that the amount in controversy exceeds $75,000. Although Optics has alleged that the amount in controversy exceeds $75,000, "'the plaintiff's allegations of [the] requisite jurisdictional amount are not necessarily dispositive of the issue.'" Missouri ex. rel. Pemiscot County v. Western Sur. Co., 51 F.3d 170, 173 (8th Cir. 1995) (quoting Zunamon v. Brown, 418 F.2d 883, 885 (8th Cir. 1969)). "[A] plaintiff who has been challenged as to the amount in controversy has the burden of showing that the diversity jurisdiction requirements have been met." Burns v. Mass. Mut. Life Ins. Co., 820 F.2d 246, 248 (8th Cir. 1987) (citations omitted). When, "'from the face of the pleadings[,] it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed . . . the suit will be dismissed.'" Id. (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S.

283, 289 (1938)).

In essence, Defendants argue that Optics cannot show that it has suffered or will suffer any damages even if Defendants have breached the settlement agreement because, according to Defendants, Optics is not making, selling, and has not applied for grant money in recent years to do research on gallium nitride-based transistors. The Court disagrees. In this case, it is not apparent to a legal certainty that Optics cannot recover the threshold jurisdictional amount or injunctive relief valued at such an amount. See Bishop Clarkson Mem'l Hosp. v. Reserve Life Ins. Co., 350 F.2d 1006, 1008 (8th Cir. 1965) (stating that "[t]he value of the right which is sought to be enforced by the suit determines the amount in controversy"). Optics claims that it has spent millions of dollars researching gallium nitride transistors and similar products. The settlement agreement was designed to protect the fruits of that research investment. Thus, the potential value of the right protected by the settlement agreement is millions of dollars, and the Court finds that Optics has sufficiently established that diversity jurisdiction exits in this case.

**B. Arbitration**

Defendants also contend that the Court should stay the case and compel arbitration. Unless there is a clear and unmistakable delegation of the question of arbitrability to an arbitrator, the Court must determine if a dispute is subject to arbitration. Lebanon Chem. Corp. v. United Farmers Plant Food, Inc., 179 F.3d 1095, 1100 (8th Cir. 1999) (citations omitted); ITT Hartford Life & Annuity Ins. Co. v. Amerishare Investors, 133 F.3d 664, 668

(8th Cir. 1998) ("When a party moves to compel arbitration, [the Court's] role is to determine whether there is an agreement between [the] parties which commits the subject matter of the dispute to arbitration."). Any doubts about contract language on arbitrability should be resolved in favor of arbitration. See Telectronics Pacing Sys., Inc. v. Guidant Corp., 143 F.3d 428, 430-31 (8th Cir. 1998) (citation omitted).

In this case, there is no dispute that a valid settlement agreement that contains a valid arbitration provision exists. Likewise, there is no debate that the Court must determine the arbitrability of the parties' dispute.[2] The controversy in this case centers on the scope of the arbitration provision which provides that disputes over the "language of any documents relating to [the] settlement shall be meditated and, if necessary, arbitrated . . ." (Khan Aff. Ex. C.)

Defendants argue that all of the parties' disputes arise from interpretations of the settlement agreement's language and are, therefore, arbitrable. Optics, on the other hand, claims that the language of the settlement agreement does not expressly provide that the inspection procedure is a prerequisite to filing suit, but instead merely states that Optics is "entitled" to hire a third party to inspect Defendants' research. Optics then argues that because the arbitration provision does not state that all disputes arising out of the agreement are subject to arbitration, but instead limits the arbitrability of the settlement agreement to

[2] Although Defendants argued in their moving papers that any dispute about arbitrability was a question for the arbitrator, at the hearing in this matter, Defendants agreed that the Court must decide the arbitrability of this case.

disputes over the agreement's language, arbitration is somehow inappropriate in this case to determine whether Defendants have actually breached the settlement agreement.

Optics' arguments are unpersuasive. The parties' disputes are ineluctably rooted in the language of the settlement agreement. The inspection procedure provides that Optics is "entitled to verify that Dr. Khan and Dr. Yang are complying" with the terms of the settlement agreement. Resolution of the parties' dispute over this procedure requires a determination of whether the word "entitled" renders the inspection procedure an elective right that may be waived in favor of other verification techniques or merely gives Optics flexibility in determining when or if it will verify Defendants' research. Similarly, the parties' dispute over the extent of the settlement agreement's limitation on Defendants' research is centered on an interpretation of the jargon-laden language of the Exhibit attached to the agreement.

Because the parties' disputes arise out of the language of the settlement agreement and related documents, this matter falls within the ambit of the arbitration provision. Accordingly, the Court will stay the case and compel arbitration in this matter.

**CONCLUSION**

For the foregoing reasons and based on all the files, records, and proceedings herein, the Court finds that Optics has sufficiently established that diversity jurisdiction exists in this case. Nevertheless, the Court finds that the parties' disputes are arbitrable. Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss for lack of subject matter

jurisdiction, to Compel Arbitration, or to Transfer Venue (Clerk Doc. No. 4) is **GRANTED in part and DENIED in part** as follows:

1. Defendants' Motion to Dismiss for lack of subject matter jurisdiction is **DENIED**;

2. Defendants' Motion to Stay the case and Compel Arbitration is **GRANTED**; and

3. Defendants' Motion to Transfer Venue is **DENIED as moot.**

Dated: April 19, 2002

Paul A. Magnuson
United States District Court Judge